[Crim. No. 3863.   In Bank.—April 15, 1935.]

## In re WILLIAM SINGER on Habeas Corpus.

Gerald J. Kenny, Public Defender, and Charles R. Boden, Chief Assistant Public Defender, for Petitioner.

Lilburn Gibson, District Attorney of Mendocino County, for Respondent.

WASTE, C. J.—Application for release on *habeas corpus* from Mendocino State Hospital. The petitioner, William Singer, on September 21, 1933, was arraigned in the Superior Court of the City and County of San Francisco on a charge of assault with a deadly weapon. His plea on arraignment, and the only plea he entered, was "not guilty by reason of insanity". At the trial before a jury, he was found insane at the time the offense was committed, and, it appearing that he had not fully regained his sanity, he was committed to the Mendocino State Hospital for the Insane. After more than one year had elapsed, he was examined and declared to be sane, and it was his contention, thereupon made in an action in the Superior Court in and for the County of Mendocino under the provisions of section 1026 et seq. of the Penal Code, that he should be released from confinement. His contention was supported by expert medical testimony; but the writ was discharged, after a hearing, and the court made an order reciting that, although the petitioner was then sane, he should be remanded to the custody of the sheriff of the city and county of San Francisco, to be held by him until he should be brought to trial or legally discharged. The sheriff held the petitioner for a time, but, because the Superior Court of San Francisco could not retake jurisdiction of the cause, and no action being taken in the matter, the petitioner was returned to the state hospital, where he is now held pending this application. All the authorities and others concerned in the matter agree that petitioner is now sane, and is entitled to his discharge.

■ The application presents a situation not covered by the law relating to the interposition in criminal cases of a plea of "not guilty by reason of insanity" and the procedure to be followed thereafter. Unless other sections. of the Penal Code solve the problem, the applicant must be dismissed. A suggestion has been made here that the petitioner was brought to a trial while he was insane, and that consequently the purported trial was no trial at all, and therefore a nullity. It rests on the well-known rule of the common law, declared in our own code, that "a person cannot be tried, adjudged to punishment, or punished for a public offense while he is insane". (Pen. Code, sec. 1367.) The trial court in this instance applied to the case this section and the succeeding sections prescribing the procedure to be followed when, at any time during the pendency of a criminal action, a doubt arises as to the sanity of the defendant. We question this application. ■ The provisions of the code (Pen. Code, secs. 1016 et seq.), under which this petitioner tendered the issue whether or not he was insane at the time he is alleged to have committed the unlawful act with which he was charged, relate to an entirely different situation than that created by doubt arising during the pendency of an action relating to the *then* state of mind of the defendant.

We cannot write into the sections (1016 et seq., *supra*) something palpably not there. We find no provision in the law which brings the case within the application of the law relating to the other situation here referred to. That being the case, the petitioner is entitled to his discharge from custody, and it is so ordered.

Curtis, J., Preston, J., Shenk, J., Seawell, J., Thompson, J., and Langdon, J., concurred.